IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PERNELL OLIVER #301-458
   Plaintiff,
 v.           * CIVIL ACTION NO. ELH-11-996

LT. JASON HARBOUGH,[1]
CHIEF OF SECURITY FRANK BISHOP,
CASE MANAGER CHARLOTTE ZIES,
   Defendants

## MEMORANDUM

Pending is defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 27. Plaintiff opposes the motion.[2] ECF No. 30. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

On April 25, 2011, Plaintiff Pernell Oliver ("Oliver"), a prisoner confined at Western Correctional Institution ("WCI"), requested emergency injunctive relief and alleged that unnamed WCI corrections personnel threatened to place him in general population despite their knowledge that, while plaintiff was confined at North Branch Correctional Institution ("NBCI"), he suffered severe injuries as a result of two attacks by members of the Black Gorilla Family ("BGF"). ECF Nos. 1 and 12. Pursuant to court order, the Office of the Maryland Attorney General responded to this claim, indicating that Oliver was transferred from NBCI to WCI and placed on administrative segregation pending investigation into his claim that he could not be safely housed at WCI in general population. ECF No. 16. Based on this response, preliminary injunctive relief was denied. ECF No. 23.

---

[1] The Clerk shall amend the docket to reflect the full spelling of defendants' names.

[2] Plaintiff's motion for enlargement of time to file his opposition motion (ECF No. 29) shall be granted nunc pro tunc.

Oliver's complaint as amended also alleged that following a May 10, 2010 attack at NBCI by two unnamed prisoners, he notified defendants that he could not be housed safely in general population at NBCI. He claims to have written to defendant Bishop and verbally advised defendants Harbaugh and Zies, but defendants failed to take action to protect him. As a result, he remained at NBCI, where he was attacked by BGF members on October 1, 2010, and sustained severe injuries, including a broken eye orbit that left him with permanent damage to the left eye. ECF No. 12 at 2 and ECF No. 15. In addition to money damages, Oliver, who was transferred to WCI after the second attack, seeks injunctive relief[3] (1) mandating his placement on protective custody at WCI and (2) providing him the opportunity to seek prosecution of Kenneth Thomas, Shelby Waters, and Lamar Johnson, the individuals who perpetrated the October 1, 2010 attack.[4] ECF No. 1, Attachment 1 at 3; ECF No. 12 at 4. As of July 14, 2011, he was housed at WCI in administrative segregation while the prison's Intelligence Unit completed its investigation and report concerning Oliver's safety. ECF No. 16 at 2.

Defendants' exhibits present a somewhat different scenario. At mid-morning on May 10, 2010, while prisoners were entering a dining hall, Oliver and fellow prisoners James Burke and

---

[3] Oliver also raises an eleventh-hour complaint about the adequacy of medical treatment. ECF No. 12 at 5-6. While he may file a new action seeking redress for a denial of medical care, such claim is not before this court at this time, and will not be addressed here.

[4] As a private citizen, Oliver has no constitutional or other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another. *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973). The court notes, however, that, in connection with the incident, each of Oliver's assailants has been charged with assaulting Oliver and correctional staff. *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=4W00057887&loc=42&detailLoc=DSCR (Lamar Johnson); http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=2W00057885&loc=42&detailLoc=DSCR (Kenneth Thomas); http://casesearch.courts.state.md.us/inquiry/inquirySearch.jis (Shelby Waters). The court also notes that, at the time of the attack, Oliver indicated he did not want to press criminal charges against these assailants. ECF No. 27, Exhibit 5, ¶ 5.

Herbert Sidbury began punching each other. An emergency code was called. Despite commands to stop fighting, the three continued to exchange blows. Pepper spray ended the fighting. All three received medical treatment for pepper spray exposure. ECF No. 27, Exhibit 1 at 4, Use of Force Cover Sheet prepared by Captain Keith Arnold and pp. 24-26. Each prisoner refused to provide a statement as to the reason for the incident. *Id*., Exhibit 1 at 18-20. Each was also charged with violating prison rules. Oliver was found guilty of a rules violation and given 150 days of segregation, reduced to 120 days. *Id*., Exhibit 1 at 54.

Defendant Zeis spoke with Oliver, who expressed concerns about enemies. She told Oliver that before names would be placed on his "enemies list," he would have to provide details of incidents, adjustments, or other information to document his claims. *Id*., Exhibit 1, ¶¶ 4-5. Zeis indicates the information was not provided. *Id.,* Exhibit 2, ¶ 6. Defendant Harbaugh also avers that Oliver did not tell him he was in fear for his life. *Id*., Exhibit 3. Although Oliver claims to have provided written information concerning Zeis's failure to take his claims seriously, ECF No. 27, Exhibit 1 at 44, Michelle Sawyers, the secretary to the NBCI Chief of Security, examined computer logs and found no correspondence from Oliver from May 2010 to October 2010. *Id*., Exhibit 4, ¶¶ 2-3.

Oliver states that when he returned to general population after serving his 120-day segregation sentence, he was approached by two gang members on September 9, 2010, and told that to remain safe in the Unit 2 compound, Oliver would have to remove their comrades' names from his enemies list.[5] *Id*., Exhibit 1 at 44. Oliver claims he complied but was later moved to Unit 4, where the attack of October 1, 2010, took place. *Id.*

---

[5] It is unclear whether Burke and Sidbury were members of, or affiliated with, a prison gang or whether their names were placed on Oliver's "enemies list" following the incident of May 10, 2010.

It appears that Oliver was transferred from NBCI to WCI on April 7, 2011. ECF No. 1, Attachment at 1. He refused housing on general population and was placed on disciplinary segregation pending investigation into whether he was, in fact, in danger from gang members, despite his transfer from NBCI. ECF No. 12 at 1-2; ECF No. 16. To date, neither Oliver nor counsel for defendants indicates that Oliver has been moved from segregation housing.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to….the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248. The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Discussion**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Oliver must establish that the correctional defendants exhibited deliberate or callous indifference to a specific, known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted).

Nevertheless, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

5

Therefore, "to survive summary judgment, [Oliver] must come forward with evidence from which it can be inferred that the defendant[s] . . . were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846.

Defendants assert as an affirmative defense that Oliver's failure to protect claim arising out of the incident of October 1, 2010, cannot proceed because he has failed to complete administrative exhaustion. The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Oliver's allegation that the named defendants failed to take steps to protect him following the May 10, 2010 attack at NBCI. It follows that this claim must be dismissed unless plaintiff can show that he has satisfied the administrative exhaustion requirement under the PLRA or that the correctional defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative

grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id*. at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated, within thirty calendar days of the incident (or from the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the IGO. *See* Division of Correction Directive 185-002.VI.L-N; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 10-209. Here, however, the October 1, 2010 incident, which involved serious injury, was investigated by the Internal Investigation Unit (IIU). ECF No. 27, Exhibit 5 at 10-26. Once IIU initiates investigation, the matter is no longer subject to the ARP process. *See Bogues v. McAlpine, et al.*, Civil Action No. CCB-11-463, ECF No. 23, Exhibit 4 at 23. Thus, defendants' invocation of the affirmative defense of failure to exhaust administrative remedies

7

fails with regard to the October 1, 2010 incident.

While Oliver's claim survives dismissal under the PLRA exhaustion requirement, Oliver nonetheless fails to provide sufficient supporting evidence to support the claim. There is no record evidence supporting his claim that he wrote to defendants Harbaugh and Bishop about his safety concerns. Furthermore, defendant Zies avers that she told Oliver to provide her with specific information concerning his safety concerns, so that she could assist in placing those individuals on Oliver's "enemies list," but Oliver failed to comply. By his own admission, Oliver indicates he acted to remove known NBCI enemies from his list. Although Thomas was a validated member of the Bloods gang, the other assailants involved in the October 1, 2010 incident were not gang affiliates. ECF No. 27, Exhibit 5 at 5. No evidence links the fist fight on May 10, 2010, in the chow line, with the brutal attack Oliver suffered on October 1, 2010. Moreover, Oliver has refused to testify against Thomas, Johnson and Waters, *id*., and a motive for the attack has not been established. Accordingly, Oliver has failed to establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm.

Oliver's claim that he is unsafe at WCI unless placed in protective custody fares no better. Of the many difficulties in managing prisons rife with acts of violence, perhaps the most difficult is discerning who is actually at risk of being harmed and who is simply taking advantage of a dangerous environment to manipulate a change in housing status. This court is mindful of its limitations in making such determinations. The lack of any evidence that Oliver has experienced any renewed threats to his safety since his transfer, coupled with his temporary assignment to segregation housing pending investigation into his claim of endangerment, places the instant case squarely within the ambit of decisions best left to prison officials. It is not the province of this court to determine how a particular prison might be more beneficently operated;

the expertise of prison officials must be given due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *see also Veney v. Wyche,* 293 F.3d 726, 734 (4th Cir. 2002) (cell assignment decisions).

Oliver's placement on segregation pending investigation of his claim is not evidence of deliberate indifference to his safety. His concerns and claims were taken seriously, and diligent efforts were made to determine whether there was a valid basis for his fears. The court has not been apprised as to whether those fears were valid, whether Oliver has been placed on protective custody or other segregation status as a result of the investigation, or whether Oliver's claims amounted to an attempt to manipulate housing assignments.

In sum, the undisputed facts in this case do not support injunctive relief or an award of money damages. Therefore, defendants are entitled to summary judgment in their favor.

A separate Order follows.

December 19, 2011 /s/
Ellen L. Hollander
United States District Judge